IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 22, 2010 Session

**VICTOR L. DOBBINS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2006-C-2624      Cheryl Blackburn, Judge**

_____

**No. M2009-02652-CCA-R3-PC - Filed November 10, 2010**

_____

Following a bench trial, the Petitioner, Victor L. Dobbins, was found guilty of being a convicted felon in possession of a handgun, a Class E felony. See Tenn. Code Ann. § 39-17-1307(b)(2). This Court affirmed his conviction on direct appeal. State v. Victor L. Dobbins, No. M2007-01751-CCA-R3-CD, 2008 WL 2648951 (Tenn. Crim. App., Nashville, July 3, 2008), perm. to appeal denied, (Tenn. Dec. 22, 2008). The Petitioner filed a timely petition for post-conviction relief. Following an evidentiary hearing, the post-conviction court denied relief. In this appeal, the Petitioner contends that the post-conviction court erred in denying him relief because: (1) trial counsel failed to properly investigate his case and (2) the cumulative effect of trial counsel's errors entitles him to a new trial. After our review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Christopher Coates, Nashville, Tennessee, for the appellant, Victor L. Dobbins.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistnt Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Trial

In his direct appeal, this Court summarized testimony at the Petitioner's trial as follows:

A bench trial of the [Petitioner] occurred on April 3, 2007. The State introduced the testimony of Audrey Dixon, a Citgo convenience store employee, who testified that she observed the [Petitioner] enter the establishment on June 17, 2006. Dixon recalled that the [Petitioner] walked "straight to the back [of the store] over by the Frito lane" approximately six feet from where she and another store employee were standing. Dixon observed the [Petitioner] "fumbling with his shirt" and saw the "butt of [a] gun" when he lifted his shirt. Dixon notified the other store employee of what she observed and stepped outside the store to call the police on a cell phone, while pretending to empty the garbage. While Dixon was outside, the [Petitioner] also went outside the store and looked around. Dixon then re-entered the store through another entrance and remained in an office from which she could see into the store. Dixon testified that the [Petitioner] then came back into the store and asked the other employee, "[W]here's the other lady at? [sic]," and the other employee informed the [Petitioner] that she did not know. Dixon recalled that the [Petitioner] "stood there for a minute" and then "walked out [and] got in a maroon car" which was parked beside a gas pump. She then observed the car drive away from the store onto the street. Dixon stated that the maroon car had not been parked at the gas pump when the [Petitioner] first appeared at the store. Dixon testified that the [Petitioner] did not make a purchase at the convenience store. On cross-examination, Dixon testified that she had no doubt that the object possessed by the [Petitioner] was a black handled gun. She reiterated that the [Petitioner] appeared to be "fixing the gun . . . like moving it around" when she observed him lift his shirt.

William Patterson, who was employed as an officer for the Metro Nashville Police Department on June 17, 2006, and who responded to Dixon's call, testified that he spotted a maroon car traveling in a direction away from the convenience store. Patterson "did a U-turn" and pulled behind the vehicle, at which time the maroon car pulled into the rear of a homeless shelter, and "[t]hree individuals got out of the vehicle and went different directions." Patterson recalled that he was able to detain the driver of the vehicle, who was a man named Frederick Roper. Patterson searched the vehicle and found a duffel bag in the driver's side floorboard containing a loaded .45 caliber handgun. Patterson testified that the [Petitioner] was detained by other officers

approximately two blocks away, at an adult bookstore located near the Citgo convenience store.

At the close of the State's proof, counsel for the [Petitioner] moved for a judgment of acquittal, which was denied by the trial court. The defense then offered the testimony of the [Petitioner]. The [Petitioner] testified that, on the day in question, he had been at an adult bookstore "looking for a video," and that he walked across the street to the Citgo convenience store, entered the store, and stood in line to purchase a pack of chewing gum. The [Petitioner] testified that while he was in the convenience store, he grabbed his wallet, which was black and thick, in order to get change to pay for gum. He claimed that while he stood in line, he noticed Dixon talking on the phone and walking out of the store. The [Petitioner] testified that he asked the other convenience store employee "what was wrong with [Dixon]" because he "thought maybe she was trying to say [he] was shoplifting or something and stereotype [him]. . . ." The [Petitioner] claimed that he paid for the gum and left the store. He stated that, as he walked outside, a maroon car pulled up to him, and that he "went around to the driver's side of the car on the backseat." After briefly speaking with the car's occupants, one of whom the [Petitioner] identified as Frederick Roper, the [Petitioner] claimed that he exited the vehicle and went back across the street to the adult bookstore, where he was later apprehended by police. The [Petitioner] admitted that he had prior felony drug convictions, and he acknowledged that he was serving community correction sentences on the date of his arrest. Based on the foregoing evidence, the trial court found the [Petitioner] guilty of being a convicted felon in possession of a handgun.

At sentencing, the State introduced the presentence report into evidence, and the parties agreed that the [Petitioner] was to be sentenced as a Range II, [m]ultiple offender. The trial court sentenced the [Petitioner] to four years in the Department of Correction and ordered that the four-year sentence run consecutively to unserved Davidson County community correction sentences stemming from felony drug convictions.

State v. Victor L. Dobbins, No. M2007-01751-CCA-R3-CD, 2008 WL 2648951, at *1-2 (Tenn. Crim. App., Nashville, July 3, 2008), perm. to appeal denied, (Tenn. Dec. 22, 2008).

## Post-Conviction Hearing

The Petitioner filed a timely petition for post-conviction relief. The Petitioner's post-conviction hearing was held on May 27, 2009.

The Petitioner presented the testimony of Frederick Roper, who stated that, on the day in question, he was driving the car in which the backpack was found. He recalled that, besides the Petitioner, two other people were in the car. He did not remember their names. He stated that he originally thought the backpack belonged to the Petitioner, however, upon further reflection, he believed that it did not. He recalled that the Petitioner sat in the back right seat of the car, and the bag was found on the floor by the driver's seat. He agreed that the Petitioner would have had "limited access" to the area where the bag was found. Mr. Roper also testified that he did not see the Petitioner with a backpack when the Petitioner came out of the convenience store, nor did he see the Petitioner with a firearm. On cross-examination, Mr. Roper acknowledged that the backpack was not his and that he did not see either of the other two men with a backpack. Then, when asked whether it had to have been the Petitioner who left the bag in the car, he responded, "I can't be sure, though. I'm not sure."

The Petitioner testified that he asked his trial counsel to investigate the other people who were in the car the day the backpack was found. He maintained that Bobby McEwing and Mr. Roper would have been "vital" witnesses because they were "ex-felons in possession of a firearm." The Petitioner also testified that, to his knowledge, his trial counsel never interviewed Mr. Roper, Mr. McEwing, Officer Patterson, or Ms. Dixon. Further, he alleged that his trial counsel never investigated who owned the items in the backpack. The Petitioner also stated that he waived his right to a jury trial per his trial counsel's advice.

The State presented the testimony of the Petitioner's trial counsel ("Trial Counsel"). He testified that he had been practicing law in Tennessee for six years and that "[e]asily ninety percent" of his practice was devoted to criminal defense. Trial Counsel recalled that he advised the Petitioner to have a jury trial, but that the Petitioner wanted a bench trial because he was "very convinced . . . that just the right thing was going to happen."

Trial Counsel testified that he and the Petitioner discussed the discovery and the evidence the State would likely present at trial. He recalled that, because Mr. Roper was also charged with a crime, he spoke to Mr. Roper's attorney, but that the information he received was not helpful. Trial Counsel testified that, because Mr. Roper was on the State's witness list, he obtained certified copies of Mr. Roper's prior convictions to impeach him. Trial Counsel acknowledged that he did not interview Mr. McEwing or Mr. Maskelly, the two other people in the car, because he "didn't think it would be helpful to the case." He further elaborated that, in his opinion, "putting multiple felons on the stand is like throwing a grenade." Trial Counsel stated that he tried to locate the adult bookstore clerk; however, she did not work at the store anymore, and the store's employees had no further information.

On cross-examination, Trial Counsel testified that he does not always interview every person a client requests that he interview because it can be "excessive." He recalled that the testimony of the convenience store clerk, who saw the Petitioner with a gun, was "the actual key piece of evidence" and that he focused on cross-examining her.

In its order denying the Petitioner relief, the post-conviction court stated as follows:

Here, the only witness called by Petitioner was Frederick Roper . . . Petitioner did not present the testimony of any of the other potential witnesses who were listed in the Amended Petition. Specifically, he did not call Bobby McEwen, Norman Muskelly, Ms. J. Wells, Audrey Dixon, or Officer William Patterson. The[] Petitioner, therefore, has failed to establish by clear and convincing evidence that he was prejudiced by trial counsel's alleged failure to call any of the above-referenced individuals. The request for post-conviction relief as to this claim is denied. . . .

Petitioner alleges that trial counsel was ineffective for failing to interview Frederick Roper and failing to call him as a witness at trial. Petitioner did present the testimony of Mr. Roper, which was shaky at best. Mr. Roper was unable to recall any specifics about the night in issue and was unable to indicate who owned the backpack other than saying he made a mistake when he told the police the bag belonged to Petitioner and thinking back on that night, it must have belonged to one of the two guests in his vehicle. However, on cross-examination, Mr. Roper was unable to maintain the bag definitively belonged to someone other than Petitioner. Even if Mr. Roper had been more certain in his testimony, his extensive criminal history and felony convictions undermines his credibility.

Further, trial counsel testified as to his efforts investigating Mr. Roper. Since Mr. Roper was represented by counsel, trial counsel was ethically prohibited from speaking directly to Mr. Roper without consent of Mr. Roper's attorney. Trial counsel testified he did in fact contact Mr. Roper's attorney and the information received was not useful for the defense. While he did not speak directly with Mr. Roper, he tangentially spoke to him through his legal counsel. Trial counsel additionally testified that he did not believe Mr. Roper would be a helpful witness for two reasons: (1) Mr. Roper had been convicted of multiple felonies which would undermine his credibility and (2) the State had disclosed that it may call Mr. Roper as a witness in its case-in-chief. Thus, trial counsel prepared a cross-examination of Mr. Roper.

-5-

The Court credits trial counsel's testimony and the request for post-conviction relief as to this claim is also denied as Petitioner has failed to demonstrate by clear and convincing evidence that trial counsel was ineffective or that he was prejudiced by any alleged deficiency.

The Petitioner now appeals.

**Analysis**

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

**I. Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient

basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

The Petitioner asserts that his "trial counsel was ineffective due to counsel's failure to properly investigate [his] case." Specifically, the Petitioner notes that his trial counsel failed to interview the three other people who rode in the car in which the backpack was found. However, the post-conviction court concluded that the Petitioner "failed to demonstrate by clear and convincing evidence that trial counsel was ineffective or that he was prejudiced by any alleged deficiency."

During the post-conviction hearing, the Petitioner's trial counsel testified that he could not speak to Mr. Roper directly because he was represented by counsel. He stated that he did contact Mr. Roper's attorney, but that the information he received was not helpful. Moreover, trial counsel testified that, because the State disclosed that it might call Mr. Roper as a witness, he obtained certified copies of Mr. Roper's previous convictions in order to impeach his credibility. Thus, we agree with the post-conviction court that the Petitioner has failed to show by clear and convincing evidence that his trial counsel was deficient for failing to interview and present Mr. Roper as a witness at the Petitioner's trial.

Moreover, the post-conviction court described Mr. Roper's testimony at the post-conviction hearing as "shaky at best." The post-conviction court also noted that Mr. Roper

"was unable to recall any specifics" and that he "was unable to maintain that the bag definitively belonged to someone other than Petitioner." Further, the post-conviction court stated that Mr. Roper's credibility was undermined by his extensive criminal history. Thus, the post-conviction court properly determined that the Petitioner was not prejudiced by his trial counsel's failure to interview and present Mr. Roper as a witness at trial.

The Petitioner also asserted in both his petition and hearing for post-conviction relief that his trial counsel failed to interview Mr. McEwing, Mr. Muskelly, Officer Patterson, and Ms. Dixon. However, we note that, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The Petitioner did not present the testimony of any of these witnesses at his post-conviction hearing, and has therefore failed to establish that he was prejudiced by his trial counsel's failure to interview them. We conclude that the post-conviction court did not err by denying the Petitioner relief on this basis.

## II. Cumulative Effect of Error

Finally, the Petitioner contends that the cumulative effect of the errors alleged above entitles him to a new trial. Having found no error, however, we conclude that the Petitioner is not entitled to relief.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the denial of post-conviction relief.

_____
DAVID H. WELLES, JUDGE